IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| URIEL BLANCO-LOPEZ,<br>    ID #49445-177,<br>        Movant, | )<br>)<br>) | |
| vs. | ) | No. 3:17-CV-2098-N-BH |
| | ) | No. 3:15-CR-245-N(3) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|        Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (doc. 2), received on August 8, 2017, should be **DENIED** with prejudice.

### I.  BACKGROUND

Uriel Blanco-Lopez (Movant) challenges his federal conviction and sentence in Cause No. 3:15-CR-245-N.  The respondent is the United States of America (Government).

**A.    Plea and Sentencing**

On October 19, 2015, Movant was charged by superseding information with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846.  (*See* doc. 60.)[1] He pleaded guilty on November 17, 2015.  (*See* doc. 126.)

In a factual resume, Movant admitted that he and others conspired to distribute methamphetamine, and that he had been arrested while delivering 2,012.4 grams of methamphetamine.  (*See* doc. 62 at 1-3.)  The factual resume stated that it was not intended to be

---

[1]    Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:15-CR-275-B.

a complete accounting of all the facts related to the charged offense, and that its limited purpose was to demonstrate that a factual basis supported the guilty plea. (*See id.* at 3.)

In a plea agreement, Movant stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 61 at 1.) He understood the nature and elements of the crime and agreed that the factual resume was true. (*See id.* at 1.) The plea agreement set out the range of punishment and stated that he had discussed the federal sentencing guidelines with counsel and understood that the sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding. He understood that no one could predict with certainty the outcome of the Court's consideration of the guidelines and that the sentence imposed was solely in the discretion of the Court. (*See id.* at 2-3.) He had reviewed all legal aspects and facts of the case with counsel and believed that it was in his best interest to plead guilty. (*See id.* at 5-6.) The guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id.* at 4.) He waived his right to contest his conviction and sentence in any direct appeal or collateral proceeding, except to bring a direct appeal challenging his sentence as either exceeding the statutory maximum punishment or having been calculated by way of an arithmetic error, to challenge the voluntariness of his plea or waiver, and to bring a claim of ineffective assistance of counsel. (*See id.* 4-5.) In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to him guilty plea, and it agreed to dismiss any remaining charges. (*See id.* at 3-4.)

On November 17, 2015, Movant and counsel appeared for his guilty plea, and he testified

under oath. (*See* doc. 126.) He stated he understood his constitutional rights, knew that a guilty plea waived his rights, and understood the consequences of pleading guilty. (*See id*. at 5-6.) He understood the charge against him and admitted that he committed each element of the offense. (*See id*. at 12.) He understood the range of punishment. (*See id*. at 18-19.) He had reviewed the plea agreement with counsel and understood everything in it. (*See id*. at 13-14.)

Movant testified that he understood the judge's authority to determine the sentence and the role of the advisory guidelines. He was instructed that the guidelines were advisory and not mandatory. He understood that he should not depend or rely on any statement or promise by anyone about the sentence. He understood that the Court would decide what the sentence would be and that it would make that determination after the presentence report was prepared. To prepare that report, the probation officer would interview him and others about the facts of the case. He understood that the presentence report might not include all of the same facts that were in the factual resume and that it may include facts that were not in his factual resume. If that happened, he would not be permitted to withdraw his guilty plea, but he would have the opportunity to object to the facts and conclusions in the presentence report. In deciding the sentence, the Court would consider the presentence report, any objections to the report, and any evidence presented at the sentencing hearing. (*See id*. at 7-8.)

Movant understood that his plea had to be voluntary and not induced by pressure, coercion, or threats. (*See id*. at 12-13.) No one made him plead guilty. (*See id*. at 13) He had discussed the factual resume with counsel and understood it and admitted that the facts set out in the factual resume were true. (*See id*. at 19-20.) He understood that the presentence report could include facts that were not in the factual resume. (*See id*. at 8.) He pleaded guilty, and the Court found that his guilty plea was knowing and voluntary. (*See id*. at 19-20.)

On February 1, 2016, the United States Probation Office (USPO) filed a Presentence Report (PSR) in which it applied the 2015 United States Sentencing Guidelines Manual (USSG). (*See* doc. 93-1 at 9, ¶ 28.) It found that Movant was accountable for the equivalent of 103,559 kilograms of marijuana, which included methamphetamine that he was personally delivering and methamphetamine that was listed in a drug ledger that police found in a residence that was used by Movant and the conspirators. (*See id.* at 6, 7, ¶¶ 16, 20.) The base offense level was 38. (*See id.*, ¶ 29.) Because of offense characteristics and guideline adjustments, the offense level was increased to 40. (*See id.* at 9-10. ¶¶ 30, 34.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. (*See id.* at 10, ¶¶ 36-38.) Based on a criminal history category of one and a statutory maximum sentence of 20 years' imprisonment, the resulting guideline range was 210-240 months' imprisonment. (*See id.* at 13, ¶ 65.)

On March 7, 2016, Movant appeared for sentencing. (*See* doc. 132.) He sought to testify in order to become eligible for the safety valve reduction of USSG § 5C1.2. (*See id.* at 3.) The court did not permit him to testify in support of a safety valve instruction and granted a continuance so that Movant could debrief and make a proffer. (*See id.* at 4-5.) The sentencing hearing reconvened on April 4, 2016. (*See id.* at 6.) Because Movant decided not to debrief, he was found ineligible for a safety valve reduction. (*See id.* at 6-7.) He was sentenced to 210 months' imprisonment, and the charges in the original indictment were dismissed. (*See* doc. 116.)

On appeal, counsel filed a brief under *Anders v. California*, 386 U.S. 736 (1967), because there were no grounds that fell within the exceptions to the waiver of appeal. As an issue that arguably supported an appeal, counsel contended that the court erred by not allowing Movant to testify in support of the safety valve reduction. *See Blanco-Lopez*, No. 16-10405 (5th Cir.)

(Appellant's brief filed July 18, 2016). The Government moved to dismiss the appeal based on the waiver of appeal. *See id.* (Appellee's motion to dismiss the appeal filed Aug. 19, 2016). Counsel responded that although the Court could dismiss the appeal under the waiver of appeal, it could also consider the ground as plain error. *See id.* (Appellant's response filed Aug. 23, 2016). The Fifth Circuit granted the Government's motion to dismiss the appeal. (*See* doc. 173); *Blanco-Lopez*, No. 16-10405 (5th Cir. Sept. 20, 2016).

**B.      Substantive Claims**

The § 2255 motion raises the following grounds:

(1) He was denied the opportunity to testify about his qualifications for and entitlement to relief under the safety valve;

(2) Counsel was ineffective on appeal.

(*See* 3:17-CV-2098-N, doc. 2 at 5-11.)  Movant also appears to assert that his plea was involuntary. The Government filed a response. (*See* doc. 11.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their

direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. SAFETY VALVE

Movant contends that he was denied the opportunity to testify in support of a safety valve reduction. As discussed, this claim was raised on appeal as an arguable ground in the *Anders* brief, and the Fifth Circuit dismissed the appeal based on the waiver of appeal. A ground that was raised and rejected on direct appeal cannot be raised in a § 2255 motion. *United States v. Fields*, 761 F.3d 443, 466 (5th Cir. 2014). Because the Fifth Circuit has already found that this ground is barred by the waiver of appeal, the waiver of appeal also prevents its consideration here.

Additionally, this ground essentially challenges the failure to apply the safety valve reduction of USSG § 5C1.2. A district court's application of a sentencing guideline is not cognizable under § 2255, however. *See United States v. Payne*, 99 F.3d 1273, 1281–82 (5th Cir. 1996); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Because Movant's claim involves the application of the sentencing guidelines, it is not cognizable under § 2255.

Finally, the claim lacks merit. To be eligible for the safety valve reduction, a defendant must debrief prior to the commencement of the sentencing hearing. *United States v. Brenes*, 250 F.3d 290, 293 (5th Cir. 2001). Despite being given an opportunity to debrief to satisfy the requirements

6

for a safety valve reduction, Movant chose not to do so.  He is not entitled to relief on this claim.

## IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  It guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687.  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696.  The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*, and the movant must show a reasonable probability that he would have prevailed on his appeal but for counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments

7

based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Movant contends that appellate counsel failed to raise a claim that there was insufficient evidence to support the amount of drugs for which he was held responsible. He also asserts that counsel should have argued that his plea and waiver of appeal were involuntary and unenforceable because he believed that the sentence would be based on the amount of drugs that he delivered.

A. **Amount of Drugs**

A defendant in a conspiracy is accountable for the amount of drugs that are reasonably foreseeable as part of the illegal activities of the conspiracy. *United States v. Castillo*, 732 F. App'x 267 (5th Cir. 2018). "[A] district court may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Mendez-Becerra*, 745 F. App'x 240, 241 (5th Cir. 2018). "In other words, defendant has the burden of presenting evidence to show the facts in the PSR are inaccurate or materially untrue." *Id*. Movant has not shown that evidence was presented at the sentencing hearing that contradicted the facts set out in the PSR regarding the amount of drugs for which he was accountable, including the drugs listed in the drug ledger. He has not shown that there was a basis for counsel to raise the issue on appeal. Moreover, such a ground would have been barred from consideration by the waiver of appeal. *See United States v. Fairley*, 735 F. App'x 153, 154 (5th Cir. 2018) (challenge to district court's relevant conduct determination regarding drugs was

8

barred by the waiver of appeal). Movant has not shown that appellate counsel was ineffective for failing to raise this ground.

**B.     Waiver**

Movant contends that counsel should have argued against the waiver of appeal on the basis that the plea was involuntary because he believed that he would be accountable only for the drugs that he delivered and not for the drugs listed in the ledger.

For an appellate waiver to be knowing and voluntary, the defendant must know that he had, and was giving up, the right to appeal his sentence, and the defendant must understand the consequences of the waiver. *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011). If the district court accurately explained the terms and consequence of the waiver of appeal, and the defendant stated that he understood them, the defendant's contention that he did not understand the waiver does not invalidate it. *Id*.

As discussed, Movant was admonished about, and understood, the waiver of appeal. He has not shown that the waiver was involuntary. He has not shown that appellate counsel was ineffective for failing to argue that the waiver of appeal was involuntary.

## V. INVOLUNTARY PLEA

In his claim of ineffective assistance of appellate counsel, Movant contends that his plea was involuntary because he believed that the sentence would be based on only the amount of drugs that he personally delivered. To the extent that his argument is liberally construed as raising a claim of an involuntary plea, it lacks merit.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz,* 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution

insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the

10

consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Here, Movant admitted both in the plea agreement and in his sworn testimony that he understood the charge against him. He had reviewed the plea agreement with counsel, and he understood everything in it, including the range of punishment. He and counsel fully discussed the case, his guilty plea, and application of the sentencing guidelines. He understood that he should not depend or rely on any statement or promise by anyone about the sentence. He acknowledged that

11

the Court would determine the sentence and the application of the advisory sentencing guidelines. He understood that the Court would decide the sentence based on the presentence report, objections to that report, and evidence at the sentencing hearing. He understood that the presentence report might not include all of the same facts that were in the factual resume and that it might include facts that were not in his factual resume. He knew that if that happened, he would not be permitted to withdraw his guilty plea, but he would have the opportunity to object to the facts and conclusions in the presentence report. He understood and waived his rights and also understood the consequences of pleading guilty. He knew that his plea had to be voluntary and not induced by pressure, coercion, or threats, and stated no one made him plead guilty. He had reviewed all legal aspects and facts of the case with counsel and believed that it was in his best interest to plead guilty, and he admitted that he committed the offense.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of veracity given to his sworn statements in open court, and the presumption of affording great evidentiary weight to court records. *See*

*Blackledge*, 431 U.S. at 73-74. As discussed, the plea documents and his sworn statements in open court, including his statements about what the Court consider in determining the appropriate sentence, contradict his claim that his plea was involuntary because he expected to be sentenced based only on the amount of drugs that he delivered, and not based on the amount of drugs that were part of the relevant conduct of the conspiracy offense. *See id*. Movant has not shown that his guilty plea was involuntary.

## VI.  EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Movant is entitled to no relief, so no hearing is required.

## VII.  RECOMMENDATION

The motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED on this 24th day of January, 2019.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE